Jackson vs. The State of Georgia.

THOMAS O. JACKSON, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1. If a jury in a criminal case be impanneled, and before any evidence is submitted the solicitor general discovers that one of the jurors was of the grand jury that returned the bill, the court may, under section 4681 of the Code, withdraw such juror, unless both sides consent to waive the objection, and if the other juries have been discharged, may continue the case.

2. To constitute the offense of an assault with intent to murder it must appear that the circumstances connected with the assault were such, that had death ensued the accused would have been guilty of murder.

3. A defendant was charged with committing this offense upon an officer whilst engaged in arresting one M. The accused introduced witnesses who testified that M. had surrendered and laid down his knife, and that the officer immediately called in others, who entered the room, some with pistols, and upon M.'s taking up his knife, but making no advance, the officer struck him immediately several blows on the head with a heavy stick, which would, in the language of the witness, "have killed a man or a mule," and that the accused, under these circumstances, shot the officer. The court charged the jury that if the officer, in the execution of his authority, was obstructed or interfered with by the defendant, and in this interference the defendant did make the

Jackson *vs.* The State of Georgia.

assault with intent to kill the officer, it would have been murder if the officer had died, unless you believe that the defendant had some provocation other than is set up in this case:

*Held*, that the legal effect of the charge was to wholly withdraw from the consideration of the jury the evidence submitted by the defendant, and it tended, in connection with another part of the charge, to impress the jury, that no matter what degree or character of violence may have been committed by the officer on M., the defendant was guilty of the offense charged. Though there was strong counter-evidence on the part of the state, the court should have left it to the jury to determine if they were satisfied from the evidence that the accused had reasonable grounds to believe that the life of M. was in serious danger, and shot to prevent him from being unlawfully killed, whether those facts did not affect the question as to malice on the part of the defendant, so as to mitigate the offense of which he may be guilty.

Criminal law. Jury. Assault with intent to murder. Officers. Before Judge POTTLE. Hancock Superior Court. October Term, 1873.

Jackson was placed on trial for the offense of assault with intent to murder, alleged to have been committed upon the person of one James M. Achord, on December 28th, 1872. Upon arraignment the defendant pleaded specially in bar as follows:

At the last term of the court the defendant was placed on trial for the same offense and upon the same indictment upon which he is now arraigned, when he waived arraignment and filed a plea of not guilty. After the case had been submitted to the jury, the solicitor general, without the consent of the defendant, took the following order:

"It appearing to the court that James Bass, who was qualified as a juror in this case, served upon the grand jury which found the true bill, it is, upon motion of the solicitor general, ordered by the court that the case be withheld from consideration by the jury, and continued for trial."

This order was duly entered of record on the minutes of the court, thereby denying to the defendant the right to have said jury, to whom his case had been regularly submitted for trial, make a verdict in the same. He therefore pleads the

facts aforesaid in bar to the further progress of the case, and prays that he be discharged and acquitted of the said offense.

Upon demurrer, said plea was stricken, and defendant excepted.

It appeared, by admission of counsel, that at the time the aforesaid order was taken, all the juries had been discharged except the one impanneled to try this case, and that said order was taken in the presence of the defendant and his counsel, and without objection from either.

The defendant pleaded not guilty. Upon the trial of the issue thus formed, substantially the following evidence was introduced:

James M. Achord, sworn: The defendant made an assault upon him in Hancock county, at Mr. Johnson's grocery, on December 28th, 1872. He shot witness with a pistol, the ball lodging in his arm, near the left elbow. This shot was fired whilst witness was fighting with McCook, and whilst his back was towards defendant. Witness then turned towards defendant, when he fired a second shot which struck witness in or near the knee of his left leg; defendant started to run after firing the second shot, witness following him to the door of the grocery; he had had no words or difficulty with the defendant prior to the firing of these shots; when witness entered the grocery, a man by the name of McCook, was in there singing, "At the roll-call, I'll be there;" he had one foot on the counter, and was dancing with the other on the floor; witness was acting at the time as the deputy marshal of the town of Sparta; he requested McCook to desist, stating that he would break the glass; saw that McCook was trying to raise a difficulty, in which he subsequently succeeded, and witness went round to shut the windows, in order to get everybody out of the house; acting upon the information that McCook had cut a negro, he went back and asked him what he meant by cutting up men in that way; told him to shut his knife and give it to witness, or to put it up; he asked where Mr. Sunham, the marshal of the town of Sparta, was; witness replied that it did not matter; he then drew

Jackson *vs.* The State of Georgia.

and opened his knife, saying that he did not shut his knife for any one, and started at witness; thought it was McCook's intention to cut him, so he struck him with his stick; he started again towards witness with his knife drawn back; witness struck him a second time with his stick, when he was shot from behind; supposed that the defendant fired this shot; saw the pistol when defendant fired the second time; the defendant fired a third shot at him, but it failed to take effect; when he was shot the second time he drew his pistol; did not see McCook lay his knife on the counter, nor hear him say he gave it up but not because he was afraid. Did not, when McCook laid his knife on the counter, turn to a crowd and say, "come in boys, here he is;" did not see him put his knife on the counter at any time.

Dr. E. O. Alfriend testified as to the dangerous character of the wounds, etc.

### FOR THE DEFENDANT.

Joseph B. Knowles, sworn: Was present when the difficulty occurred between Achord and McCook; was standing at the corner of the counter next to the partition; McCook was at the right hand of the witness; Achord came into the room with a pistol in his hand, which he put to McCook's breast, and said, "give up." McCook replied, "I give up." Achord said, "lay that knife down." McCook laid it down, but said, "I did not do it because I was afraid." Achord then said, "come in boys," upon which several negroes, some of whom were armed with pistols, came in. As they entered the room, McCook picked up his knife. Achord then struck him over the head with his stick, and said, "here he is, boys;" struck him three or four licks. McCook did not advance upon Achord; he seemed to be warding off the blows; the stick used was a weapon which would have killed a man or a mule; a pistol was fired while Achord was striking with the stick; "the boys" were coming in before a blow was struck; three or four shots were fired in the room; Achord did not fire.

McCook corroborated Knowles. He stated, in addition, that he was very drunk at the time of the difficulty.

Other evidence was introduced by the state, not material here. It mainly tended to show that McCook was too drunk at the time of the difficulty to have known anything about it.

The court, amongst other things, charged the jury as follows : "If, on the other hand, you find from the evidence that Achord was an officer of the law, I charge you that the case stands upon a different footing. If you believe from the evidence that Achord was acting in the capacity of a deputy marshal of the town of Sparta, the law presumes that he was rightfully in office as such. I further charge you, that as such officer, he had a right to interfere to prevent a breach of the peace between McCook and any other person, and if in the execution of his official authority he was obstructed or interfered with by the defendant, and in this interference the defendant did make the assault with the intent to kill the prosecutor, Achord, it would have been murder if Achord had died, unless you believe that the defendant had some provocation other than is set up in this case."

To this charge the defendant excepted.

The jury found the defendant guilty. He moved for a new trial upon the ground that the court erred in each of the aforesaid rulings to which exception was taken. The motion was overruled, and defendant excepted.

J. T. JORDAN, for plaintiff in error.

1st. Jackson cannot a second time be put on trial. 1st. His case was before submitted to the jury: Newsom *vs.* State, 2 Ga., 60. 2d. It could not then be withdrawn : Reynolds *vs.* State, 3 Ga., 53 ; 1 Wharton's Crim. Law, 588. Defendant in criminal case waives nothing unless it is expressed : Hoy *vs.* State, 39 Ga., 718.

2d. Jackson justified in defending McCook : Code, 4330 ; Roscoe on Crim. Ev., 765 ; 2 Wharton's Crim. Law, secs. 1019–20 ; Rust on Homicide, 32, 34.

3d. Jackson not culpable for resisting an officer, unless the

evidence shows he knew Achord was an officer endeavoring to preserve the peace : 2 Wharton's Crim. Law, sec. 1290.

SAMUEL LUMPKIN, solicitor general, for the state.

1st. Special plea of once in jeopardy properly overruled. The case was not submitted to a legal jury ; case not submitted till full and legal jury is sworn: 1 Bishop on Criminal Law, (5th edition,) section 1014, (659.)   This jury was not a legal one ; grand juror was on it.   New trial granted in civil case for trespass, because two of the jury trying the case had been on the grand jury that found a bill against defendant for the same offense : Hawkes *vs.* Andrews, 39 Ga., 118.   Member of grand jury accusing cannot be on jury trying : Rafe's case, 20 Ga., 65.   Member of grand jury finding bill for misdemeanor not competent to try prisoner on it: Cobb, 45 Ga., 11.   But suppose case was legally submitted.   It could have been 'withdrawn by consent or from pressing necessity :   14 Ga., 426.   Entry of "Juror withdrawn, mistrial declared," presumes consent: 14 Ga., 426.   Trial progressing, prisoner silent, waives irregularities: Dean, 43 Ga., 220.   Jury discharged with defendant's concurrence during the trial, he may be tried anew : 1 Bishop on Criminal Law, (5th edition,) secs. 673, 998.   Jury may be discharged where verdict would be void or voidable, or anything in the order discharging, shows peril removed: 1 Bishop on Criminal Law, (5th edition,) secs. 668, 1036.

2d. To the main body of the charge there can be no exception.   His charge that Jackson's interference with officer discharging his duty, and shooting him, would have been murder if Achord had died, is right: 2 Bishop on Criminal Law, (5th edition,) sections 655, 573.   Duty of officer to arrest rioters, etc., and none may oppose him, and is murder to kill him thus engaged, especially if his official character is known: 2 Bishop on Criminal Law, (5th edition,) sections 653–4, 573, 574–5.   Officers under peculiar protection of the law : Boyd, 17 Ga., 203–4.

TRIPPE, Judge.

1. At a former term of the court a jury had been impanneled to try the case, but before any evidence was submitted, it was discovered that one of the panel had been one of the grand jury that found the bill. All the other jurors had been discharged for the term. The solicitor general moved for and obtained an order to withdraw the case from the jury, and to continue it. The defendant neither waived the objection to the juror nor objected to the order. He now pleads that action of the court in bar of any further trial. The juror who had been of the grand jury who returned the bill, was incompetent to try the defendant: *Rafe vs. The State*, 20 *Georgia*, 65; *Cobb vs. The State*, 45 *Ibid.*, 11. It is not, in all cases, that the impanneling the jury prevents the state from exercising the rights it has before a full jury is made. Section 4681, Code, provides that "if the fact (the incompetency of the juror) is unknown to either party, or the counsel, at the time the juror is under investigation, and it is subsequently discovered, such objection may be made and the proof heard at any time before the prosecuting counsel submits to the jury any of his evidence in the case." This means that if the juror is incompetent he may then be discharged. If he be discharged, there is not a full jury left, and why could not a *nolle prosequi* be then entered, or a continuance had, if there be ground for it? Here there was no other jurors from whom to complete the traverse jury. Besides, the defendant did not object to the continuance. Had he waived any objection to the juror, and the court then had withdrawn him, had withdrawn the case from the jury, a different question would have been presented. Under the principle contained in the Code, the court had the power to discharge an incompetent juror at the time it did this one, unless objection to him was waived; and the State was thereby remitted to all the rights it had up to and before the case was submitted to the jury, by impanneling the whole twelve.

2. It has been twice during the present term, besides this

Jackson vs. The State of Georgia.

case, decided that to constitute the offense of an assault with intent to murder, it would be made to appear that the circumstances connected with the assault were such that had death ensued, the accused would have been guilty of murder: *Meeks vs. The State ; Smith vs. The State.*

3. We do not propose to lay down any specific rule as to how far one person may go in defending another against the commission of a crime on him.   By the common law, one who took life, even the life of an officer who was proceeding illegally against a third person, was not guilty of murder.   Wharton, in his work on Criminal Law, 2 volume, section 1019, says, where a known felony is attempted on the person, be it to rob or murder, the party assaulted may repel force by force, and even his servant attendant on him, *or any other person present,* may interfere for preventing mischief, and if death ensue, the party so interfering will be justified.   He cites Commonwealth *vs.* Daley, 4 Pennsylvania Law Journal, 153; 1 East, P. C., 271; Wharton on Homicide, 213.   See, also, Roscoe Criminal Evidence, 751, 754.   The case of the Commonwealth *vs.* Riley, Thacher C. C., 471, was where, in an affray, A knocked down B, and R, a bystander, believing the life of B to be in danger, gave B a knife to defend himself, and it was held that R was justified in giving B the knife. We would not lessen the protection the law furnishes officers in the discharge of their duty.   But an officer is not one possessed of despotic power.   He cannot be a tyrant, nor can he recklessly, in disregard of consequences, abuse his authority, and without necessity put at imminent hazard the life of any person.   We do not say that this officer so acted in this case. We do not pass upon the testimony.   The error in the charge of the court on this point was, that it did not permit the jury to pass upon it.   It was, in substance, that if the officer, in the execution of his authority was obstructed or interfered with by the defendant, and in this interference the defendant did make the assault with intent to kill, it would have been murder had the officer died, unless the jury believed that defendant had some provocation other than was set up in this case.

This was equivalent to ruling out the testimony of defendant's witnesses, Knowles and McCook, and saying to the jury that it did not affect the case. That should have been left to the jury with the proper directions. They were to pass upon the credibility of the witnesses, and if they believed them, to determine how far the rushing in of an armed crowd, and a violent attack with a deadly weapon upon McCook, would affect the question of malice on the part of defendant. Malice is an ingredient in the offense charged, as well as in that of murder, and it is for the jury, and not for the court, to find whether it exists in either case. We do not say the jury should have found that such violent demonstrations had been made. The testimony was conflicting on that matter. It was for the jury to pass upon it, and it was error for the court to tell them, in substance, that nothing had been proven by the defendant that could be of any benefit to him. We think that a new trial should be granted.

Judgment reversed.