## FLANNIGAN v. THE STATE.

1. Where a homicide occurs in the performance or commission of an act not in itself wrongful, and the attendant circumstances, while showing no intention to kill, authorize an inference that the homicide resulted from the negligent doing of an act under circumstances endangering life, the homicide is involuntary manslaughter in the commission of a lawful act without observing necessary discretion and caution.

(a) Certain phases of the evidence authorized an instruction on this grade of homicide.

2. Testimony that one incarcerated in jail on a specific charge broke jail and fled is admissible on his trial for that charge as a circumstance to be considered by the jury in determining his guilt. Sewell v. State, 76 Ga. 836; Grant v. State, 122 Ga. 748 (50 S. E. 946).

3. Testimony that the prisoner did not flee after the homicide, though he had full opportunity for flight, is irrelevant and inadmissible. Flannigan v. State, 135 Ga. 221 (69 S. E. 171).

APRIL 12, 1911.

Indictment for murder. Before Judge Morris. Cobb superior court. January 16, 1911.

Clay & Morris, for plaintiff in error. H. A. Hall, attorney-general, J. P. Brooke, solicitor-general, and J. Z. Foster, contra.

EVANS, P. J. The accused was convicted of murder. The State offered evidence tending to show that the deceased died from a knife wound intentionally inflicted by the accused. The wound was about four and a half inches in depth, deeper than the blade of the knife with which the wound was inflicted, and, in the opinion of the surgeon who examined the deceased, the blade and the jaws of the knife must have been projected in the wound. The accused contended that the homicide was accidental. His statement before the jury and the testimony offered by him tended to show that the accused, the deceased, and one other person (who testified as a witness) were going down the streets at about nine o'clock at night. The accused had an open knife in his hand, and his two companions were engaged in a playful struggle to take it away from him. In this struggle the deceased was unintentionally stabbed in the left thigh. There was no quarrel or bad feeling existing between the accused and the deceased, and after the wound was inflicted the accused and his companion carried the deceased to the office of a surgeon, where he died a few hours thereafter. The accused presented a written request for an instruction on the law of involuntary manslaughter in the commission of a lawful

act where there had not been observed necessary discretion and caution. The court refused this request.

We think this grade of homicide was involved in the case, and it was error for the judge to refuse an appropriate instruction thereon. Our code declares that "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner: Provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." Penal Code (1910), § 67. The element differentiating involuntary manslaughter in the commission of a lawful act where due caution and circumspection have not been observed from an accidental and non-criminal killing is the negligence or absence of culpable neglect in the performance of the lawful act which results in the death of a human being. If the circumstances attending the commission of a homicide by stabbing or cutting with a knife authorize the inference that there was no wrongful act, and no intention to stab or cut, but that the wound was inflicted because the person lawfully in possession of the knife may not have exercised necessary and proper precaution against a probable serious injury to the person who is engaged in a playful struggle to dispossess him of the knife, the homicide would be involuntary manslaughter. The accused under such circumstances would not be entirely exonerated from the consequences of his unintentional act, where he fails to observe proper precaution against the infliction of serious injury, or where the injury would not have been inflicted but for his negligence. In the case of *Austin* v. *State,* 110 *Ga.* 748 (36 S. E. 52, 78 Am. St. R. 134), it appeared, "that the accused and deceased with others were playing together in a house; that a gun was being handled by different members of the party; that the deceased went out of the house, and the accused followed her with the gun in his hands; that when in the yard they began again to play, and the deceased attempted to take the gun from the hands of the accused, the latter having his hand upon the stock of the gun, and the

deceased having her hand upon the barrel; that, while thus engaged in a playful struggle, the gun was accidentally discharged, killing the deceased." And upon this state of facts it was held that the charge complained of was erroneous, because it improperly submitted the law respecting the grades of homicide made by the facts in that case. In the opinion it was said: "Where death results to one from the discharge of a gun in the hands of another, and there was no intention to kill nor an intention to discharge the gun, the person in whose hands the gun was held would not be guilty of murder, although the gun may have been handled in a careless and negligent, even reckless manner. In such a case the slayer would be guilty of involuntary manslaughter only, and the particular grade of that crime would depend upon whether it was lawful or unlawful for the slayer to be in possession of a deadly weapon at the time and place of the killing." In the present case the jury could draw the inference, from the nature and severity of the wound, the part of the person upon which it was inflicted, and the character of the knife, that the accused may not have been sufficiently circumspect in guarding against the probable consequences of playing with a dangerous weapon. The accused and the deceased were about the same age, sixteen or eighteen years, and about the same size. The knife with which the wound was inflicted belonged to the defendant's employer; it lay around the place. The employer testified that he was a trusted servant and occasionally carried the knife off with him. There was nothing in the evidence to suggest that the deceased disputed the right of the accused to have possession of the knife. The effort to take the knife, according to the testimony of the accused, was but a prankish sport. We think the facts of the case come within the ruling in *Austin* v. *State,* supra, and that the court should have instructed the jury on the law of involuntary manslaughter. Other points made in the motion for new trial are ruled upon in the headnotes.

*Judgment reversed. All the Justices concur.*