PASSLEY *v.* THE STATE.

No. 14156.   JUNE 18, 1942.   REHEARING DENIED JULY 16, 1942.

*John D. Edge, Y. A. Henderson,* and *J. A. Gregory,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, J. H. Paschall, solicitor-general,* and *E. L. Reagan, assistant attorney-general,* contra.

DUCKWORTH, Justice. ■ The indictment was under the Code, § 26-1103, which is as follows: "The wilful killing of an unborn child so far developed as to be ordinarily called 'quick,' by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be punished by death or imprisonment for life, as the jury may recommend." This section together with §§ 26-1101 and 26-1102 were all a part of the same act. Ga. L. 1876, p. 113. It is evident that in enacting this statute the legislature was undertaking to provide by penal law appropriate penalties for the destruction of an unborn child. The different degrees of punishment provided in the different sections are determined by the particular criminal elements specified in the respective sections. If the child is not developed to the point where it is called quick or alive, or if it is not destroyed or killed by delivery, and the abortion or miscarriage is brought about with the motive and by the means prescribed in § 26-1102, then the offender is subject to the misdemeanor punishment prescribed by that section. If the sole motive is to destroy the child which has become quick (*Taylor* v. *State,* 105 *Ga.* 846, 33 S. E. 190; *Sullivan* v. *State,* 121 *Ga.* 183 (2), 48 S. E. 949), and the means described in § 26-1101 are employed, resulting in the death of either the child or the mother, the offender is subject to be punished as for an assault with intent to murder, as prescribed by § 26-1403. It will be noted that the crimes punishable in the two sections just considered do not involve any malice, ill will, or intent to injure the mother. Section 26-1103 imposes the penalty of death or life imprisonment for the offense therein described. The chief elements of that offense are wilful killing of the unborn child by an injury inflicted upon the mother of such child, "which would be murder if it resulted in the death of such mother." The quoted language of the section means that the injury must be inflicted upon the mother with malice and with intent to kill the mother. This evil attitude toward the mother embodying the intent to kill her, together

with the infliction of the injury upon her, are the elements of the crime which increase the penalty from that prescribed by section 26-1101 to death or life imprisonment. The legislature in the exercise of its authority and sound judgment provided this extreme penalty for the offense here described, although it is not murder. There is a general statute (Code, § 26-1002) that defines murder to be the unlawful killing of a human being with malice aforethought. Although an unborn child, if and when born alive, will become a human being the unlawful killing of which with malice aforethought is defined as murder in § 26-1002, it is obvious that the General Assembly did not consider the unborn child such a human being that its unlawful killing with malice aforethought would constitute murder as defined in § 26-1002. The foregoing analysis of the three Code sections relating to an unborn child answers the argument of counsel that these sections are inconsistent. It is argued that since in the event of the mother's death, under § 26-1101 the maximum punishment is only that prescribed for assault with intent to murder, whereas under § 26-1103, where the mother does not die and is only injured, the penalty is death or life imprisonment, the offender could decrease his punishment by actually taking the life of the mother rather than merely inflicting an injury upon her. The answer to any such attempt on the part of the offender is that at the very instant he conceives the intent to kill for the purpose stated his crime is brought under § 26-1103; and if he does in fact kill the mother with such motive the offense is murder, bringing upon such offender the extreme penalty of death or life imprisonment rather than the penalty prescribed by § 26-1101.

An indictment under § 26-1103, to charge a crime at all, must contain the essential ingredients of the crime there defined, as above set forth. Since, as above stated, an essential ingredient of the crime is an injury to the mother that would have been murder had death ensued, the indictment must either contain this language or other language having the same import. That is, it must charge that the injury was inflicted with malice and with intent to kill. In *Wright* v. *State,* 168 *Ga.* 690 (148 S. E. 731), it was said: "A specific intent to kill is an essential ingredient of the offense of assault with intent to commit murder, and the indictment should allege such intent." In order for the injury referred to in the

statute now under consideration to constitute murder of the mother had she died as the result thereof, such injury must constitute an assault with intent to murder, since she did not die. Therefore in charging the offense the indictment should allege the essential ingredient of an assault with intent to murder, by alleging that the injury was inflicted with intent to kill her. In *Wright* v. *State,* supra, after asserting that a specific intent to kill is an essential ingredient of an assault with intent to murder, and citing a number of decisions of this court to sustain that statement, it was said: "The specific intent to kill being an essential element of the offense of assault with intent to commit murder, both under the section of the Code defining this offense and under the decisions of this court, the indictment should allege the specific intent to kill. It is a well-recognized rule that every indictment must charge every essential element of an offense." It was held that the indictment there considered was defective in that it failed to charge a specific intent to kill, and that for this reason the defendant could not be tried thereon for the offense of an assault with intent to commit murder. In *Minge* v. *State,* 45 *Ga. App.* 197 (164 S. E. 68), it was held, that in an indictment for assault with intent to murder an allegation that the act was committed with malice aforethought was not the equivalent of an allegation of an intent to kill; and that the intent to kill being an essential ingredient of the offense, and the indictment failing to allege such intent, it was for this reason fatally defective. In *Adams* v. *State,* 125 *Ga.* 11 (2 *b*) (53 S. E. 804), it was held that the act of the accused in shooting at and wounding another without a legal excuse raised a legal presumption of malice, but that the presumption of an intent to kill is never present where death does not ensue, and that the intent to kill must be shown by circumstances authorizing the jury to infer as a matter of fact that the accused had such an intent. It was held by this court in *Jackson* v. *State,* 51 *Ga.* 402 (2) , and *Patterson* v. *State,* 85 *Ga.* 131 (11 S. E. 620, 21 Am. St. R. 152), that an essential element of the crime of assault with intent to murder is an intent to kill, and that this intent must be shown by the evidence. While in these cases it was decided what the evidence must necessarily show in such a case to authorize a conviction, the ruling made is tantamount to a ruling as to what an indictment that would support a conviction must allege. The State

would not be required to do more than prove by evidence the essential allegations of the indictment. From what has been said, the indictment in the present case was insufficient to charge the offense for which the defendant was convicted and sentenced; and accordingly it was error to overrule the motion in arrest of judgment raising this question. *Beall* v. *State,* 21 *Ga. App.* 73 (94 S. E. 74).

■ The general grounds of the motion assert that the verdict was unsupported by the evidence. The verdict was as follows: "We, the jury, find the defendant guilty, and recommend life imprisonment." This together with the charge of the court shows that the defendant was convicted of the offense defined in § 26-1103. Having ruled in division 1 that the indictment did not charge such offense, and the evidence, if sufficient to prove the acts described in the indictment, doing no more than that, the verdict is without evidence to support it. Accordingly it was error to overrule the motion for a new trial.

*Judgment reversed. All the Justices concur.*