GEELE *et al. v.* THE STATE.

No. 16090. MARCH 17, 1948.

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* and *E. D. Smith Jr.,* for plaintiffs in error.

*E. E. Andrews, Paul Webb, Solicitors-General,* and *J. Walter LeCraw,* contra.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) The indictment charges in each count the killing of a human being without any intention to do so, but in the commission of "a lawful act, which probably might produce such a consequence, in an unlawful manner," as provided in the Code, §. 26-1009. This same Code section defines a higher grade of involuntary manslaughter as a killing without any intention to do so, but "in the commission of an unlawful act." It is difficult to separate sharply an unlawful act from a lawful act done in an unlawful manner. This difficulty is made greater by the requirement of the Code, § 26-201, that to constitute a crime there must be "a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." When we attempt to apply the involuntary-manslaughter Code section, we must consider in connection therewith the ordinary care sections, 105-201 and 105-401, and the misfortune or accident section 26-404, where it is provided that a person shall not be found guilty of any crime when there is "no evil design, or intention, or culpable neglect," together with the section which specifies the indispensable ingredients of a crime; and the task of fitting them together and unifying them into a plain, understandable declaration of the law is exceedingly difficult. It is further complicated by the expression, "without due caution and circumspection," which is found in the Code, § 26-1006, and the expression, "where there has not been observed necessary discretion and caution," contained in the Code, § 26-1010.

Many acts of negligence may, in a sense, be unlawful and actionable without any intent to commit a crime or even an intent to do an act which results in a crime or without involving criminal negligence. We may put aside as not constituting crime all careless performance of lawful acts that would not authorize a recovery of damages in a civil suit. We can likewise eliminate

all negligence that would merely authorize a recovery of damages in a civil suit, for the law is that negligence which is sufficient to constitute a crime is something more than that degree of negligence necessary to authorize recovery in a suit for damages. *Cain* v. *State,* 55 *Ga. App.* 376 (190 S. E. 371); *Croker* v. *State,* 57 *Ga. App.* 895 (4-a) (197 S. E. 92); *Collins* v. *State,* 66 *Ga. App.* 325 (3) (18 S. E. 2d, 24). While the courts have thus recognized the difference, we have not found where the degree of this difference has been reduced to a plain statement or definition. Negligence is a general term that will embrace all manner of degrees of carelessness, but criminal negligence causes the word negligence" to take on an aggravated meaning.

In *Pool* v. *State,* 87 *Ga.* 526 (8) (13 S. E. 556), it was held that, though the accused had a pistol at a church in violation of the law, and though he handled it negligently and discharged it intentionally, thereby committing accidental homicide, yet this would not necessarily be murder; that it would be murder if the shooting was reckless, but would be involuntary manslaughter if it was only a negligent shooting. There the instrument was dangerous, and the recklessness in handling it, knowing that a person might be shot, would imply malice and intent. In *Cook* v. *State,* 93 *Ga.* 200 (18 S. E. 823), a charge of the trial court to the effect that, where one shoots another with no regard for the consequences, recklessly and carelessly, such as shooting into a crowd, not caring if he killed one, it would be murder, was approved by this court. In *Austin* v. *State,* 110 *Ga.* 740 (36 S. E. 52), this court recognized that a shooting in such circumstances, that is, where there was a reckless disregard for human life, would constitute murder, but it was there held that, where death results to one from the discharge of a gun in the hands of another, and "there was no intention to kill nor an intention to discharge the gun, the person in whose hands the gun was held would not be guilty of murder, although the gun may have been handled in a careless and negligent, even reckless, manner. In such a case the slayer would be guilty of involuntary manslaughter only." It is thought needful to here take note of the three cases just considered. The quoted portion from the last case cited clarifies what was meant in the other two cases in referring to the reckless discharge of a gun in a manner that would amount

to murder. It is the overt act of intentionally shooting in a reckless manner which renders the offender guilty of murder. If the instrument is merely handled in a reckless manner with no intention to shoot, and death results, it would be involuntary manslaughter. We quoted from *Austin* v. *State,* supra, in order to show that this court has defined negligence, carelessness, and recklessness under the involuntary-manslaughter statute to mean the same thing. It may, therefore, be correctly said that the negligence necessary under that statute to constitute a crime is the equivalent of and, in fact, is recklessness. Perhaps it would be plainer if the word "recklessness" could be substituted here for negligence. The word "reckless" is defined in Webster's New International Dictionary (2d. Ed.) as "careless, neglectful, indifferent, inconsiderate; as utterly reckless of danger." Criminal negligence must be such as shows an indifference to the injurious results of the negligent acts. It must be inconsiderate of others. In order for one to be held to have been indifferent to the safety of others or inconsiderate of their welfare, it must appear that he knew, or that an ordinarily prudent person under similar circumstances would have known, that his act might probably endanger others. It seems obvious that, for an act thus to appear dangerous, there must of necessity be some commonly recognized danger inherent in such act. The instrumentality in connection with which there is negligence must be of a kind that is dangerous because of the manner in which it is handled. Of course, there was no difficulty in finding this essential criminal ingredient in the following cases where inherently dangerous instrumentalities were carelessly handled: *Pool* v. *State,* supra, pistol; *Austin* v. *State,* supra, gun; *Flannigan* v. *State,* 136 *Ga.* 132 (70 S. E. 1107), knife; *McDonald* v. *State,* 152 *Ga.* 223 (109 S. E. 656), automobile. There it was necessary only to allege and prove negligent handling of the dangerous instrumentalities under circumstances which threatened the safety of others. But here we have a materially different situation. There is not a single instrumentality mentioned in this indictment that an ordinarily prudent person would recognize or consider as being inherently dangerous. There is not a single specified act of negligence that is prohibited by the State law. There is no

State law imposing a duty to act where these defendants are alleged to have negligently failed to act. Upon the trial of a criminal case, a verdict of guilty is authorized if there is evidence to prove the allegations of the indictment. On the application of this legal principle, if this indictment is sustained as against the demurrer then conviction would be authorized if the State proves the allegations of the indictment and no more. "The State would not be required to do more than prove by evidence the essential allegations of the indictment." *Passley* v. *State*, 194 *Ga.* 327, 331 (21 S. E. 2d, 230). This would mean that, despite the fact that all of the hotels in this State might have been operated in the same condition and manner as the Winecoff Hotel and were all regarded by hotel people and others as being safe, yet these defendants must suffer conviction for criminal negligence. It is, therefore, the duty of the court to say, by ruling on the demurrer to this indictment, whether or not the alleged negligence was criminal. Then the function of the jury is to decide the questions of fact made by the evidence. Of course, if, because of special knowledge and information, these defendants knew of dangers which an ordinarily prudent person would not have recognized as dangers, they would be responsible and might be held criminally liable. However, the indictment does not charge that they had such knowledge or were chargeable with such knowledge, and if the indictment is sustained against the demurrers, then conviction could be upheld without proof of such special knowledge. The noble purpose of the law in penalizing criminal negligence is not upheld by convicting one as a criminal upon a charge of negligence that does not contain the essential ingredient of criminal negligence.

The State leans heavily upon Commonwealth *v.* Welansky, 316 Mass. 383 (55 N. E. 2d, 902). That case is so dissimilar on its facts that it has no application here. There highly inflammable decorations were used, and the fire originated by an act of a sixteen-year-old employee of the defendant in striking a match so close to such decorations that they were ignited and the fire followed. There the hall was equipped with doors marked as emergency exists and so constructed as to cause them to open when pressure was exerted from the inside. These doors had been locked and could not be opened, and many persons died

while seeking to escape through them. We have no similar facts here. The origin of the fire in the instant case is unknown. Certainly the defendants are not charged with having originated the fire. The indictment does not allege facts showing criminal negligence, and therefore fails to allege a crime, and the court erred in overruling the general demurrer thereto.

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified, and Wyatt, J., who took no part in the consideration or decision of this case.*