## 42406. LEWIS v. THE STATE.
(335 SE2d 560)

GREGORY, Justice.

Mary Lewis was convicted of the malice murder of her infant daughter, Joanne, at a bench trial before a judge of the Superior Court of Laurens County. We affirm.

On the evening of June 1, 1984, a Dublin funeral home received a

---

call notifying them of a deceased female infant at the Lewis' residence. The funeral home, in turn, notified the East Dublin Police Department and the Laurens County Coroner. A police officer arrived at the Lewis home and found the father standing outside. The officer asked him if he could see the deceased infant. The father then led the officer to a bedroom in the Lewis home. When the coroner arrived he found the baby lying on her back with arms outstretched and stiff from rigor mortis. The coroner by flashlight could see that her lips were cut and badly torn. He asked the parents what had happened. They said that the injuries had occurred while they were trying to feed the girl. The coroner re-examined the body of the ten-and-one-half-month-old child and suggested that the police officer read the *Miranda* warnings to the parents. The police officer did so and placed them under arrest. After the couple agreed to waive their right to silence, the coroner again asked what had happened. The parents repeated their statements about feeding difficulties.

The parents were taken to jail. Soon after arriving, Mrs. Lewis was questioned by Melodie Smith, a caseworker with the Laurens County Department of Family and Children's Services. Ms. Smith asked Mrs. Lewis several questions relating to placement of her other seven children, the family income and her financial ability to take care of her children. Mrs. Lewis told her that the couple had been getting AFDC assistance and food stamps, and had plenty of food at home. She also said the child had not seen a doctor for eight-and-one-half months. Ms. Smith then asked Mrs. Lewis what had happened to the deceased infant that day. Mrs. Lewis told her that she and her husband had left their children at home unattended to pay some bills. When they returned, she said, they found the baby breathing erratically. According to Mrs. Lewis, the husband checked a child care manual but could not find the cause of the baby's ailment. She also told Ms. Smith that the couple had made a bad mistake. Ms. Smith repeated Mrs. Lewis' statements during testimony at trial.

On June 2, 1984, a Georgia Bureau of Investigation agent examined the child's body along with the Laurens County Coroner. Later in his investigation, the agent talked to Mrs. Lewis' ten-year-old daughter, Tapetha Love, about her parents' treatment of her deceased sister. In the affidavit to support the issuance of a search warrant, the agent stated that Tapetha had told him of witnessing her mother bind the infant with belts and tape her eyes and mouth shut, as well as whipping the baby with a belt. The agent orally testified before the magistrate of Tapetha's reports of her mother stuffing paper towels in the infant's mouth while taping her eyes and mouth shut and strapping her to the bed. The affidavit also noted that the child had received severe abuse and that her death had been diagnosed as being caused by pneumonia secondary to malnutrition. The

agent told the magistrate he was seeking the warrant to find the items described in the reports of abuse. A warrant was issued and a search of the Lewis' home turned up several belts and a strip of electrical tape, which was admitted into evidence at trial.

Testimony by Mrs. Lewis' mother, Rebecca Mercer, revealed that eight days before the death, Mrs. Mercer had urged her daughter to take the infant to the doctor. Mrs. Lewis refused. Mrs. Mercer testified that she offered to take the child herself and pay for the medical services, but the daughter again refused.

The final autopsy report showed that the ten-month-old child weighed only eight-and-one-half pounds. Her extremities were underdeveloped due to malnutrition. The body was also marked by numerous abrasions and sores around her face and lips, decaying tissue inside the mouth, and severe rashes on her lower body. The doctor performing the autopsy stated at trial that he believed the infant's condition was a result of weeks, and maybe months, of neglect.

In the trial judge's verdict, he found that the child had been grossly neglected. The judge also found the neglect caused a condition of malnutrition in the infant and that the acts of neglect were intentional and deliberate on the part of Mrs. Lewis. Although the State sought the death penalty, the judge sentenced Mrs. Lewis to life in prison. The judge denied Mrs. Lewis' motion for a new trial and she appeals.

1. In her first enumeration of error, Mrs. Lewis claims that statements she made to the DFACS worker should have been suppressed because they resulted from a warrantless, illegal arrest. As authority Mrs. Lewis cites *Payton v. New York*, 445 U. S. 573 (100 SC 1371, 63 LE2d 639) (1980), for the proposition that a police officer has no right to arrest a suspect in a private home without an arrest warrant and in the absence of exigent circumstances. Thus, Mrs. Lewis claims, since the East Dublin officer was in her home and arrested her without a warrant and in the absence of exigent circumstances, her arrest was illegal and any statements made to the DFACS worker are tainted fruit of that illegal arrest.

The facts in *Payton* involve a warrantless and *nonconsensual* entry by police into a suspect's home to make an arrest. Here, testimony of the officer on the scene makes it clear that he and the coroner were in the Lewis home with the husband's consent, and without any objection by Mrs. Lewis. In fact, at the time the husband led the police officer into the bedroom of his house, there were no charges pending against the couple. Thus, the police officer was legitimately on the premises at the time of Mrs. Lewis' arrest, and *Payton* does not apply.

We note that the police officer acted with the requisite statutory authority for making an arrest. OCGA § 17-4-20, which spells out sit-

uations under which arrests are lawful, provides: "An arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant . . . if the officer has probable cause to believe that an act of family violence, as defined in Code § 19-13-1, has been committed. . . ." OCGA § 19-13-1 defines family violence as "(1) Any felony; or (2) Commission of offenses of battery, assault, criminal damage to property, unlawful restraint or criminal trespass" between family members.

2. Mrs. Lewis also claims the evidence that resulted from the search of her home should have been suppressed by the trial court because the magistrate did not have probable cause to issue the warrant. She contends the magistrate was not presented with sufficient facts to ascertain the underlying circumstances of the alleged crime. She also claims the agent's affidavit and testimony to the magistrate left an absolute void as to establishing the time frame for the occurrence of events.

OCGA § 17-5-21 provides that a warrant will issue upon facts "sufficient to show probable cause that a crime is being committed or has been committed. . . ." The test of probable cause is whether it would justify a person of reasonable caution in believing that an offense has been or is being committed, and this requires probability, which is less than a certainty but more than mere suspicion or possibility. *Brown v. State*, 151 Ga. App. 830, 831 (261 SE2d 717) (1979). Evidence used in the determination of probable cause may be presented by written affidavit, sworn testimony or both. *Bishop v. State*, 155 Ga. 611, 612 (271 SE2d 743) (1980).

By way of the G.B.I. agent's affidavit and sworn testimony in Mrs. Lewis' case, the determining magistrate knew that an infant was found dead in her parents' home and that the cause of the death was diagnosed as resulting from pneumonia caused by malnutrition. The agent had relayed accounts of beatings and mistreatment witnessed by the suspect's daughter. The judge was also told the results of the autopsy. Under the guidelines for determination of probable cause, we find these circumstances were adequate to cause a person of reasonable caution to believe an offense had been committed.

As to the staleness of the warrant request, the time of the occurrence of the facts relied upon is a prime element in the concept of probable cause. *Fowler v. State*, 121 Ga. App. 22, 23 (172 SE2d 447) (1970). The proper analysis to determine timeliness is to view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant. *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984). For instance, when the sworn testimony indicates the existence of an ongoing activity, the passage of time becomes less significant than would be the

case with a single, isolated transaction. 252 Ga. at 347. In Mrs. Lewis' case, the magistrate was presented with evidence of severe child neglect that spanned the short ten-month life of the victim and culminated in the child's death only days before. Viewing the totality of the circumstances, there is reasonable probability that items used in her mistreatment were still contained in the Lewis home.

Mrs. Lewis also claims that the information on which the search warrant was issued did not amount to probable cause because it consisted mostly of hearsay statements from her daughter Tapetha. Mrs. Lewis contends that the magistrate had no reason to believe Tapetha was reliable or was telling the truth.

The rule in Georgia has been that an affidavit supporting a search warrant may be based on hearsay information as long as there is a substantial basis for crediting the hearsay. *Devier v. State*, 247 Ga. 635, 637 (277 SE2d 729) (1981). In Mrs. Lewis' case, the magistrate knew the identity of the hearsay declarant, who was one of Mrs. Lewis' own children relaying eyewitness accounts of abuse and beatings of her deceased sister. At the time of the issuance of the warrant, the magistrate had no reason to believe the child would give false information about her own mother for any reason. The circumstances presented to the magistrate, on the other hand, supplied a substantial basis for crediting the hearsay.

3. Mrs. Lewis contends that the trial court erred in denying her "Motion for Selection and Appointment of Counsel in Accordance with the Law." In essence, she claims that the procedure followed in appointing her attorney deviated from a systematic selection process mandated by OCGA § 17-12-4, the due process clause of the 14th Amendment of the Constitution of the United States, and Art. I, Sec. I, Par. I of the Georgia State Constitution.

In considering Mrs. Lewis' motion, the trial court filed an order explaining that in Laurens County, when the public defender's office is unavailable, attorneys for indigents are appointed from an alphabetical list in an equitable manner. This step was necessary in Mrs. Lewis' case to avoid a conflict of interest because the public defender's office was already representing her husband. In death penalty cases, according to the order, it was the policy of the court to consider the seriousness of the charge, along with the experience, skill and competence of the attorney to be appointed. The court said it based this policy on the then-proposed Uniform Superior Court Rules. Mrs. Lewis' appointed counsel was one of only two attorneys available in Laurens County with experience in death penalty cases.

We see no harm to Mrs. Lewis resulting from the appointment procedure followed. Mrs. Lewis has no room to complain that her due process rights were violated by a procedure that provided her with, in the trial judge's opinion, one of the two best-suited lawyers in Lau-

rens County to represent her. We note there is no claim of ineffective assistance of counsel.

4. Mrs. Lewis asserts that her equal protection rights were violated because she was not given an opportunity to appear before the grand jury that returned her indictment. She bases her claim on the fact that OCGA §§ 17-7-52, 45-11-4 and 45-15-11 allow certain public officials the privilege of appearing before grand juries which consider wrongful acts alleged to have been committed by the official. Thus, Mrs. Lewis argues that the statutory scheme violates equal protection by allowing one class of persons the right to appear before the grand jury while denying the same right to her own class.

In a habeas corpus action, the Fifth Circuit Court of Appeals rejected a similar equal protection challenge to OCGA § 45-11-4. *Sweeney v. Balkcom*, 358 F2d 415 (5th Cir. 1966). The court held that under equal protection analysis, a state legislature's declaration that a policy requires a certain measure should not be disturbed under the 14th Amendment unless a court can see clearly that there is no fair reason for the law that would require with equal force its extension to others it leaves untouched. 358 F2d at 418. The Fifth Circuit found that Georgia had a rational basis for OCGA § 45-11-4. The court found the rationale to be a greater danger that indictments and accusations will be brought against public officials based on partisan, political grounds. The court also acknowledged potential devastating effects on public officials and damage to public confidence in government. We agree.

Furthermore, the protection afforded public officials in the three provisions is available only when an official is charged with malfeasance or malpractice or other violation of public duties. There must be a close connection between the wrongful acts and the defendant's performance of official duties. See *Orkin v. State*, 236 Ga. 176, 192 (223 SE2d 61) (1976). *Clinkscales v. State*, 102 Ga. App. 670 (117 SE2d 229) (1960).

5. Finally, Mrs. Lewis complains that the trial court erred in her conviction for murder because there was not sufficient evidence to prove guilt beyond a reasonable doubt. A review of the evidence adduced at the trial in the light most favorable to the judge's verdict shows that a rational trier of fact could have found Mrs. Lewis guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 29, 1985.

*Kight, Larsen & Flanders, Billy R. Kight,* for appellant.
*Beverly B. Hayes, Jr., District Attorney, Michael J. Bowers, At-*

*torney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.

