## 73068. LEWIS v. THE STATE.
### (349 SE2d 257)

BANKE, Chief Judge.

The appellant, James Lewis, and his wife, Mary Lewis, were jointly indicted for murdering their ten and-a-half month-old daughter, Joann, "by malnutrition and physical abuse." They were tried separately, with the mother being found guilty of murder (see *Lewis v. State*, 255 Ga. 101 (335 SE2d 560) (1985)), and the appellant of involuntary manslaughter. This appeal is from the denial of the appellant's motion for new trial.

The child was born prematurely, with a twin sister. She weighed only three pounds, seven ounces at birth and only eight and-a-half pounds at death. There was expert testimony that the child's premature birth, combined with a condition known as respiratory distress, caused her to be extremely vulnerable to other complications and diseases, thus hindering normal development. According to a medical examiner from the State Crime Laboratory who performed the autopsy, the cause of death was "pneumonia associated with malnutrition and child abuse."

With reference to his finding that abuse had contributed to the child's death, the medical examiner testified that he had observed, among other things, "a pressure type laceration and abrasion across the lower lip that tells me that something has been bound around the lip and chin area of the child that has continued to rub and an abrasion that is extremely deep within the epidermis of the child." Elaborating, he stated, "I'm talking about cutting almost through the skin of the lip. Something has been bound around that child's chin that's caused this pressure and abrasion on the child."

The appellant and his wife were taken into custody on June 2, 1984, the day of the baby's death, and were formally charged with murder the following day. On June 6, 1984, a GBI agent obtained a warrant for the search of their residence, based, in part, on statements made to him by the couple's nine-year-old daughter to the effect that she had witnessed the mother bind the deceased infant with belts, tape her eyes and mouth shut, and administer whippings to her with a belt. Execution of the search warrant resulted in the seizure of several belts and a strip of black electrical tape from the couple's

home. *Held*:

1. The appellant enumerates as error the denial of his motion to suppress the evidence seized during the search of his residence, contending that probable cause was not established to support the issuance of the search warrant. Because the Supreme Court, in affirming the mother's conviction, has previously upheld the validity of the search (see *Lewis v. State*, supra, 255 Ga. at 104 (2)), we find this enumeration of error to be without merit.

2. The appellant enumerates as error the admission into evidence of 14 pre-autopsy photographs and one post-autopsy photograph of the child's body, contending that these exhibits were unnecessarily repetitious, gruesome, and inflammatory.

The pre-autopsy photographs were clearly relevant and admissible to show both the extent of the injuries and the extent of the neglect and malnutrition from which the child had suffered. "A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983). See also *Lewis v. State*, 253 Ga. 339, 340 (1) (320 SE2d 161) (1984); *Hance v. State*, 254 Ga. 575 (4) (332 SE2d 287) (1985). While it is true that two of the photographs in question appear to be identical and certain others somewhat repetitious, we decline to presume that such duplication in and of itself resulted in undue prejudice to the appellant.

The post-autopsy photograph was offered to establish that certain forces which had caused bruises to the infant's scalp had also resulted in bruises to its skull. Although the state's own expert testified that these injuries indicated only "minor type forces hitting the top of the head, and it could be that the head is either hit against the wall or hit against the crib or something of that nature," the photograph nevertheless conveyed additional, relevant information concerning the nature and extent of the child's injuries which was not observable from the pre-autopsy photographs. Consequently, we hold that it was admissible under the rule set forth in *Brown v. State*, supra, 250 Ga. at 867.

Although the appellant did not make such an argument at trial, he contends on appeal that the autopsy photograph was additionally objectionable because of the placement of a baby bottle adjacent to the infant's lips. As this argument was not made at trial, the state was not called upon at that time to offer an explanation for the presence of this object, nor has the state ventured an explanation on appeal. Whatever its purpose, however, we hold that it did not render the otherwise relevant and admissible photograph so unduly inflammatory and prejudicial as to entitle the appellant to a new trial. The appellant's second and third enumerations of error are without merit.

3. In three separate enumerations of error, the appellant contends that the trial court did not give proper and adequate instructions on the elements of the offense of involuntary manslaughter. The charge given by the court was as follows: "[I]f you find that the death of the child occurred as a result of negligent omission of [the appellant], then this negligent omission would be involuntary manslaughter by an unlawful act."

The appellant's initial objection to this charge is that it failed to convey the requirements, as set forth in *Paulhill v. State*, 229 Ga. 415, 418 (191 SE2d 842) (1972), that, to be guilty of involuntary manslaughter in the commission of an unlawful act, the accused must have intended to commit the unlawful act, and the death of the victim must have occurred as the proximate result of the unlawful act. We hold that the requirement of criminal intent was adequately covered by the court's charge that, in order for the accused to be found guilty of any crime, the jury must determine beyond a reasonable doubt that the alleged criminal act or omission was committed with criminal intent or criminal negligence. See OCGA § 16-2-1. The court properly defined criminal negligence as "reckless conduct such as shows an indifference to the injurious results of a negligent act, and indifference to the safety of others, and a lack of consideration for their welfare." See Suggested Pattern Instructions for Criminal Cases, Council of Superior Court Judges of Georgia, p. 32 (1984 ed.); *Geele v. State*, 203 Ga. 369, 375 (47 SE2d 283) (1948).

The court's charge that the requirement of criminal intent could be satisfied by a showing of criminal negligence on the part of the appellant was clearly a correct statement of the law. See *Smith v. State*, 238 Ga. 146 (2) (231 SE2d 757) (1977); *Keye v. State*, 136 Ga. App. 707 (1) (222 SE2d 172) (1975). With regard to the requirement that the death must have been the proximate result of the criminal act, this was adequately conveyed by the court's instruction that the death must have occurred "as a result of" the negligent omission.

The appellant contends that the charge was further defective in that the court did not instruct on involuntary manslaughter in the commission of a lawful act in an unlawful manner, which is a misdemeanor (see OCGA § 16-5-3 (b)), but instructed only on involuntary manslaughter in the commission of an unlawful act, which is a felony (see OCGA § 16-5-3 (a)). We can, however, conceive of no reasonable view of the evidence which would have authorized a finding that the death resulted from the commission of a lawful act. The appellant's assertion that such a finding would have been authorized under "the theory of feeding the child, but in an improper manner," (i.e., in such a manner as not to permit the child to continue living), can most charitably be characterized as ludicrous.

Generally speaking, "[i]t is the joint and several duty of each par-

ent to provide for the maintenance, protection, and education of his child until the child reaches the age of majority . . ." OCGA § 19-7-2. The Supreme Court has held that the death of a child resulting from a negligent omission to comply with this duty "would amount to involuntary manslaughter by the commission of an unlawful act." *Estes v. State*, 251 Ga. 347, 378 (305 SE2d 778) (1983). See also OCGA § 16-5-60. Cf. *Keye v. State*, supra, 136 Ga. App. at 709 (2). Consequently, we do not find the court's charge on involuntary manslaughter to have been defective for any of the reasons urged.

4. The appellant contends that the trial court erred in refusing to give his requested charge that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Even assuming arguendo that such a charge was required under the circumstances of this case, the transcript reveals that one was in fact given. Consequently, this enumeration of error is also without merit.

5. The evidence presented was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of involuntary manslaughter in the commission of an unlawful act. See generally OCGA § 16-5-3 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 56) (1979).

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 19, 1986.

*H. Gibbs Flanders, Jr.*, for appellant.
*Beverly B. Hayes, District Attorney, Edwin J. Wilson, Assistant District Attorney*, for appellee.