### 41243. WILLIAMS v. THE STATE.
(326 SE2d 444)

BELL, Justice.

Delmus Warren Williams was convicted and sentenced to life imprisonment for the shooting murder of Ervin Zeigler. He appeals and we affirm.[1]

On the night of April 27, 1983 appellant and Thomas Kirk Mike[2] drove to a local lounge. Both had been drinking. At the lounge they met an acquaintance, Patricia Belton. Belton and Mike were dancing together when the victim, Ervin Zeigler, approached them, pushed Mike, and threatened him. Zeigler left the lounge, followed by Mike and Williams. Zeigler got into his car and sped away. Mike and Williams pursued Zeigler. The cars stopped about a quarter mile from the lounge. Mike and Williams exited the car, Williams holding a shotgun and Mike with a .22 caliber automatic pistol. They shot at Zeigler, who died of a .22 caliber head wound and a shotgun wound to the abdomen. Either wound would have been fatal.

---

[1] The murder was committed April 28, 1983. Williams was indicted June 6. He was convicted and sentenced November 16, 1983. He moved for a new trial on December 8. The order denying his motion was entered May 9, 1984. He filed his notice of appeal May 17. The record of the case was certified May 28, and docketed in this court on June 12, 1984. The case was submitted for decision on briefs July 27, 1984.

[2] Mike was indicted with Williams for Zeigler's murder. He testified as a state's witness at Williams' trial. In return for his testimony the court accepted his plea to a reduced charge of voluntary manslaughter and imposed a twenty-year sentence.

At trial Antonio Jenkins testified that he had loaned Williams the car he and Mike used the night of the murder. He said that his .410 gauge single shot shotgun was in the trunk, and a box of Remington shells was in the glove box. When his car was recovered after the murder, the gun and shells were missing. He testified that earlier that week he had fired the shotgun in a parking lot. He directed police to the site, where they recovered a spent Remington Peters .410 gauge shotgun cartridge case. Roger Wayne Parian of the State Crime Lab testified that he compared this case with a similar spent case found at the murder scene. His opinion, based on firing pin impressions and breechface markings, was that both shells had been fired in the same gun.

Melvin Kanada testified that he drove Patricia Belton to the lounge the night of the murder. He was parked outside the lounge when he saw Zeigler run out of the lounge, jump in his car, and drive away speeding. He did not see Mike and Williams get in their car, but he did observe their car suddenly appear and speed away directly behind Zeigler's car. He saw the second car catch up with the first car, and two or three minutes later return and pass the lounge. Belton came out of the lounge, and Kanada drove her to the murder scene. Zeigler's car was afire, and Kanada helped another man pull his body out of the car. He saw no weapon at the scene. He said that Belton did not reach into Zeigler's car or pick anything up. Kanada drove Belton back to the lounge. Mike and Williams returned, and Kanada saw Belton get in with them, after which they drove off.

The lot where Zeigler was murdered belonged to a local business. A night watchman employed by the business testified that at 2:25 a.m. on April 28 he saw Zeigler's car stop in a parking area across the street and another car pull in next to it. He saw the second car's passenger get out and fire a shotgun at the back of Zeigler's car. The second car's driver got out and fired a handgun several times. The passenger reloaded the shotgun, walked to Zeigler's car, and fired at the front windshield. The two men got into their car and drove away. The watchman saw no gunfire from Zeigler. He was unable to identify the occupants of the second car. A second watchman testified, substantially confirming the first watchman's story.

Patricia Belton testified that she saw Zeigler twice push Mike and tell him, "don't F [sic] with this girl." She said she did not know Zeigler and did not know why he was upset. She observed Mike tell Williams about the incident and point out Zeigler. She saw Zeigler leave, followed by the two men. She followed, and saw that Zeigler had opened the trunk of his car. She saw him close it, get in his car, and speed off. She did not see anything in his hands. She saw Mike and Williams get the shotgun and the pistol from the trunk of Jenkins' car. Delmus got in the passenger side, holding the shotgun, and

Mike drove away fast. She asked Kanada to drive her to the murder scene. She did not see any weapon there. When Williams and Mike returned to the lounge, Williams told her to get in the car. They drove to a barbershop near which Williams and Mike had hidden their guns. She testified that Williams told her they "ain't stepped on nothing but a cockroach, that's all he was, a cockroach." Mike asked her how many wounds there were in Zeigler's body, then told her, "baby, the man disrespect me." Williams warned her to "not never say nothing about this in life."

Thomas Mike testified that the .22 was his pistol, and that he had placed it under the front seat of Jenkins' car when he got together with Williams on the 27th. He said that Zeigler, whom he did not know, "came out of a crowd [at the lounge] in a very hostile and reckless manner and pushed me and told me not to F with [Belton], and he threatened my life." Mike said he walked away but Zeigler came over, pushed him from behind, and threatened to kill him. Zeigler appeared to be intoxicated. Zeigler left when he saw Williams approaching. Zeigler did not speak to or threaten Williams. Mike told Williams they should leave to avoid trouble. When they got outside the lounge they saw that Zeigler had his trunk open. He saw Zeigler remove an object from the truck. He did not see what the object was, but at the time he thought it was a weapon. Williams opened their trunk and took out a .410 shotgun. Mike told Williams he wanted to follow Zeigler to see why he had assaulted him, and Williams agreed. They followed Zeigler, who parked near the business. At Williams' suggestion Mike stopped the car and blocked Zeigler's car. When they got out of their car Zeigler was shouting profanities. At that point, Mike said, he felt "really angry" and "wanted to get to him." Williams fired a shot and Zeigler backed up, striking Jenkins' car. Mike fired twice, and Zeigler pulled forward and ran into a fence. Williams walked forward and fired again. Mike did not see any return gunfire from Zeigler. They drove away and hid their guns near the barbershop, then went back to the lounge. At first he wanted to tell the police about the incident, and Williams agreed, but Belton told them there was no reason to do that, and they changed their minds. They retrieved the guns from their hiding spot, but Mike later threw away his .22. He did not recall the alleged post-murder statement by Williams, comparing Zeigler to a cockroach, nor did he recall having questioned Belton about Zeigler's wounds or having stated that Zeigler had disrespected him.

Zeigler's wife testified that he owned only one gun, a pistol, and that he left it at home the night of his murder.

After the state rested, Delmus Williams testified. His story differed significantly from those of the previous witnesses. According to him, he attempted to act as a peacemaker between Mike and Zeigler,

but Zeigler threatened both him and Mike, telling them he would kill them, and made a gesture as if he were reaching for a weapon in his back pocket. Williams said he and Mike decided to leave. As they left, Mike told him he wanted to kill Zeigler, and asked Williams to get his pistol. Williams refused and suggested they leave to avoid trouble. When they went outside he saw Zeigler at his car trunk holding what appeared to be a pistol. Williams got the shotgun to protect himself. He said the shotgun was his own, not Jenkins'. Mike got his pistol out and jumped in the driver's seat, telling Williams he wanted to get Zeigler. Against Williams' wishes, Mike chased down Zeigler and blocked his car. Zeigler put his car in reverse and rammed their car, hitting Williams' side. Williams saw Zeigler point a pistol. Williams got out of the car and dove to the ground about the same time Zeigler fired a shot at him. Williams scrambled up and fired his shotgun. He heard three more shots, two of them from Mike. Panicking, and believing he had no alternative but to kill Zeigler, Williams ran forward and fired another shotgun blast into Zeigler's windshield. He and Mike left the scene and hid the guns. He was able to talk Mike into going to the police, but after they returned to the lounge Belton told them they should not do that, and they apparently decided not to. Williams said Belton picked up Zeigler's pistol at the murder scene, and he later saw it in her possession.

1. Williams alleges that the court erroneously denied his motion for a directed verdict of acquittal at the close of all the evidence. "The appellant contends that this motion should have been granted because the evidence presented by the state was insufficient as a matter of law to authorize a conviction. We disagree, and hold that the trial court did not err in denying the appellant's motion for a directed verdict, as, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lee v. State*, 247 Ga. 411 (6) (276 SE2d 590) (1981); *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979)." *Wright v. State*, 253 Ga. 1 (1) (316 SE2d 445) (1984).

2. Appellant has filed a supplemental brief to buttress his allegation that the verdict was contrary to the evidence and the law. Attached to the brief is an affidavit by Thomas Mike, in which Mike recants his trial testimony and alleges he perjured himself at trial. He further states that he gave this false testimony at the behest of his trial counsel and the prosecutor.

This supplemental material is in substance an extraordinary motion for new trial based on newly discovered evidence. As such, it must be directed to the trial court in the first instance. See OCGA §§ 5-5-40, 5-5-41; *Dick v. State*, 248 Ga. 898 (287 SE2d 11) (1982). This has not been done, and accordingly we will not consider the issue at

this time.

3. Williams contends that the court erred in admitting autopsy photographs of the victim. This enumeration is without merit. Appellant's trial counsel initially objected to the photographs, but then withdrew his objection. He therefore did not preserve this issue for appeal.

4. Williams argues that the court improperly excluded testimony he sought from a state's witness who had investigated the crime scene. We disagree. Appellant's counsel sought to have the witness recite hearsay contained in a written report, and the court did not err in sustaining the state's objection thereto. OCGA § 24-3-1.

5. Williams complains that the court erred in allowing the prosecution to conduct an improper redirect examination of the state's crime scene investigator. Specifically, Williams says that the court should not have allowed the witness to testify that he searched the appellant's car on April 29, 1983, the day after the murder.

A trial judge has discretion on redirect examination to "permit the questioner to inquire about something which he should have asked about during an earlier step but which was overlooked." *Mincey v. State*, 251 Ga. 255, 267 (15) (304 SE2d 882) (1983). The judge's decision to allow such an inquiry will not be overturned absent a showing of gross abuse of discretion. Id. 267-68. In this case, before redirect the witness testified that the appellant's car was in police custody the day after the crime. He also testified that he had examined the car. In light of this testimony, the court clearly did not abuse its discretion by permitting the witness on redirect to respond to the closely related question of what date he had searched the car.

6. Williams contends that he was denied effective assistance of trial counsel.[3] "This claim, however, apparently was not made in the trial court, and we thus decline to address the merits of this claim at the present time. *Williams v. State*, 251 Ga. 749 (20) (312 SE2d 40) (1983); *Brown v. State*, 251 Ga. 598 (3) (308 SE2d 182) (1983); *Simpson v. State*, 250 Ga. 365 (2) (297 SE2d 288) (1982)." *Elliott v. State*, 253 Ga. 417 (2b) (320 SE2d 361) (1984).

7. Williams enumerates as error a portion of the court's instructions to the jury, which appellant claims was self-contradictory and therefore confusing to the jury. The state has supplemented the record with a correction of the transcript, showing that the alleged judicial misstatement was nothing more than a typographical error in transcription of what the court actually said.

8. During cross-examination of Belton, appellant's counsel asked

---

[3] Williams' trial counsel was court-appointed. On appeal Williams was initially represented by a different court-appointed attorney. This lawyer withdrew from the case, and Williams retained his present counsel to argue this appeal.

her whether she had ever seen any other killings outside the lounge. The state objected that the question was irrelevant, and the court sustained the objection. Appellant argues that the court abused its discretion; he says the question was relevant to the issue of whether Zeigler had a gun in his possession, and therefore whether Williams killed him in self-defense.

"The scope of cross-examination is not unlimited, but rests largely within the discretion of the trial court, and its discretion will not be disturbed on appeal unless it has been abused." *Moore v. State,* 251 Ga. 499, 501 (2a) (307 SE2d 476) (1983). Even if other killings occurred outside the lounge, that fact clearly would not support the inference that on this occasion this patron of the lounge had a gun, and the court properly excluded the question.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 20, 1985.

*Stephen R. Yekel, Thomas M. Cerbone, Karen Dove Barr,* for appellant.

*Spencer Lawton, Jr., District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.