## 41307. MUFF v. THE STATE.
### (326 SE2d 454)

BELL, Justice.

Vannie Will Muff was found guilty of the murder of Jimmie Lee Crimes, and received a life sentence. His motion for new trial was denied, and he appeals. We affirm.[1]

---

[1] The crime was committed on May 28, 1983. The Webster County jury returned its verdict of guilty on August 19, 1983. Muff was granted leave to file an out-of-time motion for new trial, and he did so on October 20, 1983. The transcript of evidence was filed on March 8,

The victim and his wife, Maggie Crimes, owned and operated a night club called the Disco Village. On May 27, 1983, at about 11:30 p.m. Muff and his co-defendant, Albert Hall, went to the poolroom of the Disco Village to wait for a friend. While there, Hall and Willie Moses, Crimes' nephew, had an argument, eventually moving outside the bar. Muff testified that while Hall and Moses were arguing, Crimes came outside and began arguing with him. Jerome Brown, another patron of the Disco Village that evening, told Maggie Crimes about the arguments. She interceded, and ordered Hall and Muff to leave. Mrs. Crimes testified that neither she nor Moses nor her husband had a gun or any other sort of weapon during the argument. Muff, on the other hand, testified that Mr. Crimes threatened him and that Mr. and Mrs. Crimes had guns and Moses an open knife.

After Mrs. Crimes interceded, Muff and Hall left the Disco Village. Jerome Brown testified that about 30 minutes later Muff returned to the Disco Village, stood inside the poolroom door for several minutes holding a rifle behind his back, and then went outdoors. About 30 minutes later, Brown helped Mr. Crimes close the poolroom and then went outside, where he saw two or three men in a pickup truck. He said that the pickup started up, and drove around the kitchen side of the Disco Village. A few seconds later, he heard three shots.

In a statement given to GBI Agent Charlie Marchant about 10:30 a.m. the morning following the shooting, Muff said that after the argument at the Disco Village, he went home and got his .22 caliber rifle, and then went back to the Disco Village in his employer's pickup truck. He arrived there about the same time as his brother Jerry, and went into the poolroom carrying a black pressure hose. After a friend told him he would be hurt if he stayed, he went outside to his pickup. He stated that he started the truck and drove by the kitchen, where he saw Mr. Crimes behind a window. He then picked up his rifle and fired at Crimes two or three times. He said he was angry with Crimes for the way he had treated him earlier in the evening and on other occasions.

Muff testified to a different version of events at trial. He said that after he went inside the poolroom with the black pressure hose, he went back outside to the pickup, which was parked in front of the open poolroom door, to wait for his brother. While he was sitting in the truck, he saw Mr. Crimes inside the disco. According to Muff, Crimes shook his finger at him and patted his gun. Muff's brother came out in about fifteen minutes and left in his own truck. At that

1984. The motion for new trial was amended on April 24, 1984 and was denied on June 4, 1984. Notice of appeal was filed on June 13, 1984. The record was docketed in this court on July 5, 1984. It was submitted for decision without oral argument on August 17, 1984.

time Muff and Hall also proceeded to leave. Muff testified that as they were driving by the kitchen, Hall said "there he [Crimes] goes, he's got a gun." Muff said that he looked through the kitchen window and saw Crimes pointing a gun at them, and that he picked up his rifle and quickly fired three shots at Crimes. Believing he had not hit Crimes, he then went home.

After Maggie Crimes dispersed the arguing men, she went to sleep in a bedroom attached to the Disco Village. At about 1:30 a.m. she was awakened by several shots, and arose to investigate. She discovered her husband lying on the kitchen floor. He had been shot through a kitchen window, over which a curtain was drawn so that only 10 inches of the window were uncovered. Three bullets had been fired through that opening, one of which struck Crimes in the back of the head near the base of the skull, severing his spinal cord and killing him. When Crimes was found, a holster was attached to his belt, but no gun was in it. Maggie Crimes said that he wore the holster in case he needed to carry a pistol, but that the pistol was otherwise always left under the bar counter. She said that he was not wearing the gun that evening. Webster County Sheriff George Gore testified that he saw a pistol under the cash register on the bar, but did not seize it because he did not consider it relevant. Crimes was found with five one dollar bills gripped in his left hand, and was lying about six feet from the cash register.

1. Although Muff does not challenge the sufficiency of the evidence, we find that viewing the evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found Muff guilty of murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Muff contends that the trial court erred in admitting his .22 caliber rifle into evidence. We disagree.

When Muff objected to the admissibility of the rifle, the trial court conducted a Jackson-Denno hearing outside the presence of the jury. Sheriff Gore testified that when he arrived at Muff's house about 4:00 a.m. on the morning of the shooting, he asked Muff to come outside and that Muff did so. He said that he advised Muff of his Miranda rights and then asked him twice if he understood them. Muff said that he did. Sheriff Gore then asked Muff if he had been to the Disco Village earlier that evening, and that when Muff responded that he had, he asked Muff if he had a gun in the house. He said that Muff said that he did, and that Muff then went to his bedroom, with the sheriff accompanying him, got the rifle, and gave it to the sheriff. Sheriff Gore also testified that he could smell some beer on Muff's breath, but that he did not appear to be drunk.

Muff testified that he did not receive any Miranda warnings; that

he was very drunk and sleepy when awakened; and that he only has a sixth-grade education.

a. Muff first argues that the rifle was inadmissible because it was obtained pursuant to an illegal arrest. Muff, however, never objected to the admissibility of the rifle on that ground, and is thus precluded from raising that issue on appeal. *Seabrooks v. State*, 251 Ga. 564 (1) (308 SE2d 160) (1983).

b. Muff appears to also contend that the rifle was inadmissible because it was obtained in violation of his right against self-incrimination. He bases this argument on the alternative contentions that investigating officers failed to give him Miranda warnings or that, if they did, he did not make a voluntary, knowing, and intelligent waiver of his privilege against self-incrimination. Pretermitting a decision on whether either allegation, if true, would justify the suppression of the rifle as evidence, we find that the trial court did not abuse its discretion in finding that Muff was informed of his Miranda rights and made a knowing, voluntary, and intelligent waiver thereof.

On appeal, a trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted unless clearly erroneous. *Gaskins v. State*, 250 Ga. 386 (2) (297 SE2d 729) (1982); *Strickland v. State*, 250 Ga. 624 (2) (300 SE2d 156) (1983). Here, the evidence presented supports the conclusions that Muff received his Miranda warnings, and that neither his alleged intoxication, *Strickland v. State*, supra, 250 Ga. at 626, nor his lack of education, *Moses v. State*, 245 Ga. 180 (263 SE2d 916) (1980) prevented him from making a voluntary, knowing, and intelligent waiver of his constitutional rights.

In any event, even if the rifle was obtained in violation of any of Muff's constitutional rights, its admission into evidence would constitute harmless error. There was no question that Muff shot Crimes with his rifle; he admitted that in both his statement to the police and his testimony at trial. We therefore find no reasonable possibility that the admission of the rifle might have contributed to the conviction, and hold that if any error occurred in its admission, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18, 23-24 (87 SC 824, 17 LE2d 705) (1967); *Wilson v. Zant*, 249 Ga. 373 (1) (290 SE2d 442) (1982).

3. In his second enumeration of error, which contains no citation of authority, Muff contends that the trial court's grant of a directed verdict in favor of his co-defendant, Albert Hall, created unfair prejudice against him, in that the jury may have inferred his guilt from the removal of Hall. We perceive no unfair prejudice, since the roles of Hall and Muff in the crime were undisputed, and since Muff still had the opportunity to take the stand and explain why he shot Crimes.

4. Muff contends, in his third enumeration of error, that the trial

court erred in not requiring certain of Crimes' family members subpoenaed by him to produce the pistol that Sheriff Gore saw under the cash register on the evening of the shooting. See OCGA § 24-10-22.

A trial court has the power to compel obedience to a subpoena. See OCGA §§ 24-10-25, 15-1-3. In the instant case, however, we find no error in the trial court's refusal to take some action to compel the subpoenaed family members to produce the gun, since their testimony showed that they did not have the gun or know of its location. Moreover, when Maggie Crimes indicated that another family member might have knowledge of the gun, the court directed Muff to subpoena that member so that she could be brought to court as soon as possible. This direction by the trial court was reasonable under the circumstances of this case. Muff failed to subpoena that individual or to move for a continuance to do so, and therefore will not be heard on appeal to complain of the failure of the gun to be produced.

Furthermore, the production of the pistol would merely have been cumulative of the other testimony that the gun was under the cash register on the evening of the shooting. For this reason, even if the trial court committed any error in not taking action to compel the production of the gun, it was harmless. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur, except Marshall, P. J., not participating.*

DECIDED FEBRUARY 27, 1985.

*Crisp, Oxford & Gatewood, Claire Cornwell,* for appellant.
*John R. Parks, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn,* for appellee.