A04A0112. THE STATE v. KEDDINGTON.
(592 SE2d 532)

ELDRIDGE, Judge.

The State Court of Gwinnett County granted Katie Ann Keddington's motion to suppress the results of her Intoxilyzer test because the arresting officer, W. J. Bates, did not have a reasonable, articulable suspicion to stop Keddington's vehicle. The State appeals, and we affirm.

In September 2002, Officer Bates pulled over Keddington's 1995 Mitsubishi Eclipse because the vehicle had "Euro" style taillights, i.e., white lenses with red circles in the middle. At the hearing on the motion to suppress, Bates testified that he recognized Keddington's vehicle as a "dark green Mitsubishi Eclipse, one of the older model ones." He further testified that Keddington's taillights emitted a red light as the law requires; however, based upon personal research he had conducted in 2001, Bates testified that he was familiar with the manufacturing specifications for the taillights installed on Mitsubishi automobiles, and the "Euro" style taillights on the back of Keddington's vehicle did not meet those specifications. Thus, according to Bates, Keddington was in violation of OCGA § 40-8-23 (e), which requires that "All lenses on taillights shall be maintained in good repair and shall meet manufacturers' specifications."

Upon cross-examination, the evidence shows that Officer Bates could not produce any documentation in support of his research; could not state the dimension of the correct taillight lenses ostensibly used by Mitsubishi; and could not state what company manufactured taillights for Mitsubishi automobiles. In addition, Officer Bates' research encompassed model years 1998-2001, but he stopped Keddington's older model Mitsubishi, because "[y]ou can have a span of three to five years that use the exact same part number, and then it'll change with the body styles of the vehicles."

---

[9] OCGA § 9-11-12 (b) (6).

Following the close of evidence, the State argued that Bates' failure to produce any factual support for his research-based stop was not relevant; that if Officer Bates believed the Mitsubishi's taillights did not meet manufacturers' specifications, that was sufficient to provide the reasonable, articulable suspicion necessary to support the stop. The prosecutor stated,

> Judge, I think the only issue really for the Court at this point is credibility. Do we believe that the officer believed himself that this was a violation. If you don't believe that the officer was honest in assuming that this was a violation based on his own research, then the Court would find that there's no articulable suspicion.

Without findings of fact or conclusions of law, the trial court granted Keddington's motion to suppress. *Held*:

1. It is unclear from the record on what specific basis the trial court granted the motion to suppress. The court had the authority to find less than credible the officer's assertion that he conducted "personal research."[1] And, while the trial court did not impugn the officer's integrity on the record, it appears that the State framed the issue where just such credibility finding would necessarily underpin the court's determination. In which case, we must affirm, because "[o]n appeal, a trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted unless clearly erroneous. [Cits.]"[2] With absolutely no factual support for the officer's research claims — either by way of research content, operation, or reference, we cannot find clear error in the trial court's credibility ruling.

2. Credibility, however, is not the only basis upon which the trial court could have granted Keddington's motion to suppress.

> The behavior giving rise to an officer's reasonable suspicion need not be a violation of the law. Even if the driver's actions do not amount to a per se traffic violation, an officer may have a reasonable, articulable suspicion that a traffic offense was being committed. We cannot require an officer to make immediate judgments regarding whether every element of a particular crime has been established before making brief stops. And the fact that it is later shown that some element of the crime was not satisfied will not invalidate the stop if the officer acted in good faith in stopping the car because he believed an unlawful act was committed. The

---

[1] *Berry v. State*, 254 Ga. 101, 103-104 (1) (326 SE2d 748) (1985).
[2] *Muff v. State*, 254 Ga. 45, 48 (2) (b) (326 SE2d 454) (1985).

question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.[3]

In this case, the stop of an older model, 1995 Mitsubishi automobile based upon manufacturers' taillight specifications for Mitsubishi model years 1998-2001 cannot be deemed, under all the circumstances, reasonable. The chance that Keddington's older model Mitsubishi might also fall within the taillight specifications of the later models Bates purportedly researched is just that, a chance; especially in light of Officer Bates' testimony that manufacturers' specifications may change every three years. This is not the type of "good faith" belief that a traffic violation is actually being committed which would support an "investigative" stop.[4] Here, Officer Bates articulated no factual basis for believing that Keddington's older model Mitsubishi automobile was in violation of OCGA § 40-8-23 (e), simply because a newer model would be. Since, the trial court's determinations based upon disputed facts and credibility are adopted unless they are clearly erroneous, the grant of Keddington's motion to suppress must be affirmed.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED DECEMBER 22, 2003.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Wanda L. Vance, Jason R. Samuels, Assistant Solicitors-General,* for appellant.

*Robert Greenwald,* for appellee.

---

[3] (Citations and punctuation omitted.) *State v. Calhoun,* 255 Ga. App. 753, 755 (566 SE2d 447) (2002).

[4] Indeed, further "investigation" pursuant to such stop would have revealed nothing, since the 1995 manufacturers' specifications for Mitsubishi taillights were not available on the scene.